# IN THE
# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 96-cr-04** |
| **v.** | ) | **Judge J.P. Stadtmueller** |
| | ) | |
| **JERRY WALKER** | ) | |
| **Defendant.** | ) | |

## DEFENDANT JERRY WALKER'S MOTION
## TO REDUCE HIS LIFE SENTENCE
## PURSUANT TO SECTION 404 OF THE FIRST STEP ACT

*"Mr. Walker lives in a place that is constantly being surrounded with negativity, chances to participate in criminal activity, and further any crimes that he may have committed previously; but his actions have shown no participation in that. I personally think that he would easily become a productive member of society, a mentor to others about their own life choices, and a good family man."*

- BOP Senior Officer J. Scachette (Ex. B)

This is a case that began with nine co-defendants and ends with only one who is still incarcerated and buried under a life sentence: Jerry Walker. At 54 years old, Mr. Jerry Walker has spent approximately 25 years in prison. Without the certainty of release, Mr. Walker has not allowed a life sentence to stifle his educational and personal pursuits, completing his G.E.D. and hundreds of adult continuing education courses.

He has also not allowed a life sentence to sever bonds with his family, son or the Milwaukee community. Mr. Walker has been incarcerated since his son was 7 years old, yet he continued to help his son with homework and encouraged him to continue his education.

*"Most notably, I feel one of his greatest accomplishments has been his ability to actively participate in my upbringing, to this day, he is the most relevant and influential individual in my life.*
- Son of Jerry Walker, Jerry Shaw (Ex. F)

Mr. Walker's encouragement and influence paid off: his son, now 31, graduated from college with honors. Though he parented earnestly from behind bars, sadly, Mr. Walker was unable to attend the graduation. Mr. Walker's mentorship extends beyond his immediate family and to the Milwaukee community overall. Letters from over 100 community members tout Mr. Walker's character, mentorship and selflessness. Mr. Walker has not received a single disciplinary infraction during his 25 years of incarceration.[1] Saliently, 15 officers of the BOP have written in support of Mr. Walker's release.[2]

Mr. Walker was sentenced pre-*Booker*, which tied the sentencing judge's hands to a mandatory guidelines life sentence. Mr. Walker is not the only one who has demonstrated a capacity for change. America's drug laws have improved since he was sentenced to permanent imprisonment. The prejudicial crack laws that mandated Mr. Walker's life sentence are obsolete; and so are the mandatory guidelines. Most recently, Section 404 of the First Step Act of 2018 authorized district courts to reduce crack sentences as if the statutory penalty provisions of the Fair Sentencing Act (FSA) had been in effect at the time of the original sentencing.

For these reasons, and as further explained below, DEFENDANT JERRY WALKER, by his counsel CALYSSA ZELLARS, respectfully **asks the court to reduce his life sentence to a total term of 324 months' imprisonment on Count 2 (CCE), to be**

---

[1]     BOP Custody Classification Form for Jerry Walker, Reg. No. 04582-089, dated April 26, 2019,  is attached as Exhibit A.
[2]     BOP Letters of support from prison officials are attached as Exhibit B.

**served concurrently with all other counts.** In further support of this motion, we state as follows:

I.      THE FACTS

**A. The Mississippi Delta to Milwaukee: Jerry Walker's Life and Early Years**

Jerry Walker was born in Clarksdale, Mississippi, the home of the blues, to Vera Lee Walker and Bo Henderson. From a young age Vera Walker picked cotton in Southern Mississippi, working long and arduous hours on a plantation. Handcuffed to poverty, Vera made only a few dollars per day as a cotton picker. Mr. Walker remembers interacting with his father, an insurance salesman, only briefly. Mr. Walker is Vera's second youngest child of seven. Seeking a better life, Vera moved her family northward.

Mr. Walker grew up in Milwaukee's disenfranchised 53206 neighborhood, the zip code that incarcerates the highest percentage of black men in the United States[3]. Located just north of Milwaukee's downtown, Milwaukee's 53206 zip code was deemed "too negro and too slum to be saved" by the federal government.[4] Unaware that the government had given up on zip code 53206, Walker's mother relocated her family from Mississippi to the Milwaukee neighborhood in the 1970's.

Like many Milwaukeeans, industry and American industrialization fed the Walker family. His mother and extended family labored at various plants and industries in the city. Like many residents of rust belt cities in the 1970's, Vera Walker was able to provide for her family on her lower to middle income wage. Walker recalls that his mother was a strong

---

[3]     Caleb Gayle, *Inside the Most Incarcerated Zip Code in the Country*, *available at*: https://newrepublic.com/article/155241/inside-most-incarcerated-zip-code-country (last accessed Oct. 30, 2020).

[4]     *Id.*

3

woman who never allowed others to see her struggle. Still, even as a child, he knew money was tight. To supplement the family's finances, a young Jerry Walker worked at the local grocery store pushing people's carts or in his neighborhood shoveling snow or raking leaves. His biggest regret is the first day he went to jail in 1981. He blames hanging out with the wrong crowd for the reason he was in and out of trouble in his life.

### B. Jerry Walker's Road to a Life Sentence: His Federal Sentencing

Jerry Walker's crack and powder cocaine offenses were part of "a continuing series of violations" that buttressed his life sentence for operating a continuing criminal enterprise in violation of Title 21 U.S.C. §848. (Sup. Indict. at ECF 535).

More specifically, Mr. Walker was charged by Superseding Indictment with the following drug offenses: conspiring to distribute a controlled substance (Count 1s: 21 U.S.C. §846 and 18 U.S.C. §2), operating a continuing criminal enterprise (Count 2s: 21 U.S.C. §848), possessing with the intent to distribute cocaine and cocaine base, (Counts 3s through 10s: 21 U.S.C. §841(a)(1) and 18 U.S.C. §2),[5] and money laundering (Count 11s: 18 U.S.C. §1956(a)(1)(B)(i) and §2).[6] Walker faced a mandatory minimum sentence of ten years to life on the conspiracy count, 20 years to life on the CCE count, and a maximum of 20 years' imprisonment on the remaining counts.

Walker's crack offenses were an integral part of the government's trial proof that he operated a continuing criminal enterprise. As to Count Eight, the government submitted evidence to the jury that, on November 2, 1994, "a DEA informant purchased one ounce

---

[5]     As discussed more fully below, the drug transactions charged in Counts 8, 9 and 10 involved crack. These transactions, among others, were the basis of Mr. Walker's CCE conviction and eventual life sentence.

[6]     The Superseding Indictment, ECF No. 36, is attached as Exhibit C.

of crack cocaine from Roy Evans, Tony Walton, and Ben Walker (Jerry Walker's brother)." PSR at ¶ 45.

As to Count Nine, the government submitted evidence to the jury that on November 2, 1995, "a DEA informant purchased one ounce of crack cocaine from Mr. Walker and Roy Evans." PSR at ¶ 50.

As to Count Ten, the government submitted evidence to the jury that on November 14, 1995, "a DEA informant purchased two ounces of crack cocaine from Jerry Walker, Roy Evans, and Terrell Coleman." PSR at ¶ 51.

On November 14, 1996, a jury convicted Jerry Walker on all counts. The government did not request a special verdict concerning drug type or specific drug quantity findings.

Mr. Walker's sentencing occurred on April 4, 1997. The Court made relevant conduct determinations and found Walker to be responsible for at least 150 kilograms of cocaine. Because Walker's powder cocaine relevant conduct placed him at the top of the drug table, the Court did not make any specific finding as to the quantity of crack involved in his case. The resulting base offense level under USSG § 2D1.1 was 38. Walker received a 2-level increase for a gun, a 4-level increase for leadership, and 2-level increase for obstruction; the total offense level was 46 on the conspiracy charged in Count 1s. PSR at ¶ 73. Under USSG § 2D1.5, the total offense level was also 46 on the continuing criminal enterprise charged in Count 2s. PSR at ¶ 74. Pursuant to the Grouping rules found at USSG § 3D1.3(a), the combined offense level for all the counts was determined by taking the highest offense level applicable to the counts in the group. PSR at ¶87. In this case,

level 46 was the highest offense level. As such, with a total offense level of 46, and criminal history category IV, the Court determined Walker's applicable guideline to be life imprisonment.

Walker was sentenced pre-*Booker*. With no discretion, the Court imposed a life sentence on the conspiracy charged in Count One. The Court imposed a mandatory guideline life sentence for the continuing criminal enterprise charged in Count Two. Walker was sentenced to 240 months' imprisonment on Counts Three through Eleven, with all sentences to run concurrently. ECF No. 322.

On appeal, the Seventh Circuit vacated Walker's conspiracy conviction and sentence as to Count One because the conspiracy was a lesser-included offense to the CCE conviction charged in Count Two. ECF No. 594. The appellate court upheld Walker's remaining convictions and sentences. *United States v. Walker et. al*, 2:96-cr-00004-17-3287 (7th Cir. 2017). Walker's motions for relief under 28 U.S.C. §2255 were denied. ECF No. 471. In 2015, Walker moved to reduce his sentence pursuant to USSG Amendment 786, ECF. No. 556. The Court denied Amendment 782 relief because Walker's unchanged guideline range meant the court lacked authority to reduce his sentence. ECF No. 571.

Mr. Walker now submits this Motion to Reduce His Life Sentence Pursuant to Section 404 of the First Step Act.

## II.    THE LAW

### A.    The Fair Sentencing Act of 2010

Prior to the Fair Sentencing Act of 2010 (FSA), an offense involving 50 grams or more of crack cocaine triggered a 10-year mandatory minimum and a statutory maximum of life imprisonment. An offense involving 5 to 49.9 grams of crack cocaine triggered a 5-year minimum sentence and a statutory maximum of 40 years of imprisonment. *Dorsey v. United States, 567* U.S. 260, 266 (2012).

Section 2 of the FSA amended § 841(b)(1)(A)(iii) by striking "50 grams" and inserting "280 grams" and amended § 841(b)(1)(B)(iii) by striking "5 grams" and inserting "28 grams." Public Law 111-220; 124 Stat. 2372, § 2. Accordingly, post-FSA, it takes 280 grams of crack cocaine to trigger § 841(b)(1)(A)(iii)'s 10-year mandatory minimum and 28 grams to trigger § 841(b)(1)(B)(iii)'s 5-year mandatory minimum. *Dorsey, 567* U.S. at 269. The Supreme Court determined the FSA applied to any defendant who had not been sentenced as of the Act's effective date: August 3, 2010. *Id.* at 281. The FSA did not apply retroactively to defendants sentenced prior to August 3, 2010. *Id.*

### B.    The First Step Act of 2018

The First Step Act of 2018 legislatively authorized district courts to reduce pre-FSA crack penalties retroactively for "covered offense[s]". Specifically, § 404(a) of the First Step Act defines a covered offense as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372), that was committed before August 3, 2010." Section 404(b) then states: "[a] court that imposed a sentence for a covered offense may, on motion

of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed."[7]

To assess a First Step Act motion, the Court first identifies the defendant's "statute of conviction." *United States v. Shaw*, 957 F.3d 734, 739 (7th Cir. 2020) (rejecting a fact-based approach). Next, the Court determines whether the Fair Sentencing Act of 2010 modified the penalties for defendant's statute of conviction. Pub. L. No. 115-391, 132 Stat. 5194, § 404(a). The Court then considers whether the defendant has earned a sentence reduction.

## III. DISCUSSION

The First Step Act independently authorizes a district court to impose a reduced sentence for crack-related convictions where the statutory penalty provisions of the Fair Sentencing Act would have applied had the Act been in effect at the time of the original sentencing. *United States v. Shaw*, 957 F.3d 734, 739 (7th Cir. 2020). The question is whether Mr. Walker is *eligible* for First Step Act relief and, if so, whether he has *earned* a sentence reduction. We address these arguments in turn:

---

[7] There are only two limitations to the Court's ability to impose a reduced sentence. First, the defendant cannot receive a reduced sentence if the sentence was imposed or previously reduced in accordance with the amendment made by sections 2 and 3 of the FSA. Second, if the Court has already rejected a motion filed under § 404 of the Fair Sentencing Act "after a complete review of the motion on the merits" the defendant cannot ask for a second bite at the apple. First Step Act § 404(c). Neither exception applies to Mr. Walker's case, as he has never received or been denied a Section 404 reduction.

## A. Jerry Walker is *eligible* for a sentence reduction under Section 404 of the First Step Act.

Jerry Walker's CCE Conviction - which involved multiple crack transactions- *is* a "covered offense" under the First Step Act. To determine whether an offense is a "covered offense," the district courts in the Seventh Circuit examine the statute of conviction to determine whether the FSA modified at least one of the statute of conviction's penalties. *United States v. Moore,* No. 95 CR 509-2, 2020 WL 4748154 (N.D. Ill. Aug 17, 2020). The *Moore* Court determined that the defendant's statute of conviction was § 848 as a whole rather than § 848c, the portion of the statute that describes the conduct necessary to violate § 848. The Court then concluded that a CCE conviction under § 848 is a "covered offense" "because the Fair Sentencing Act modified at least one of § 848's penalties—it raised the quantity of crack cocaine needed to trigger mandatory life under § 848(b)(2)(A)". *Id.* at 2.

In applying this analysis, several district courts have concluded that a CCE conviction is a "covered offense" for purposes of the First Step Act. See, *Hall v. United States*, 2:93-cr-162-RAJ, at *10 (E.D. Va. Mar. 2, 2020) (concluding that a "conviction for [engaging in a continuing criminal enterprise] is a 'covered offense' under the First Step Act, not only because the provisions Petitioner was convicted under references § 841 and § 846, but also because the essence of Petitioner's conviction under § 848 involved Petitioner's trafficking of crack cocaine."); *United States v. Brown*, No. 3:08-CR-00011-1, 2020 WL 3106320, at *4 (W.D. Va. June 11, 2020) (Holding: "[B]ecause at least one of the penalties for Defendant's [21 U.S.C. Sec. 848] statute of conviction was modified by

Section 2 or 3 of the Fair Sentencing Act, this Court concludes that Defendant is eligible for resentencing under the First Step Act."); *United States v. Dean*, No. 97-276-3, 2020 WL 2526476, at *3 (holding that defendant who was convicted and sentenced in accordance with the penalties imposed under § 848(a) committed a covered offense, pursuant to the First Step Act, and was therefore eligible for resentencing); *United States v. Burrell*, No. 97 CR 998-1 (RJD), 2020 WL 5014783, at *1 (E.D.N.Y. Aug. 25, 2020) (granting First Step Act motion where the government conceded § 848(a) conviction was a "covered offense" and the defendant's continuing criminal enterprise involved both heroin and cocaine base).

The Superseding Indictment charged Mr. Walker with engaging in CCE in violation of 21 U.S.C. § 841 and § 848.[8] The pertinent language of Count Two is as follows:

<u>COUNT TWO</u>

THE GRAND JURY FURTHER CHARGES:

Beginning on or about January 1, 1988, and continuing to on or about December 5, 1995, in the Eastern District of Wisconsin and elsewhere, the defendant,

JERRY WALKER,

knowingly and intentionally engaged in a continuing criminal enterprise in that "the defendant knowingly and intentionally violated Title 21, United States Code, Sections 841(a)(1) and 846, including but not limited to the violations alleged in Counts 1, 3, 4, 5, 6, 7, 8, 9, and 10 of this indictment, which are realleged and incorporated by reference herein, all of which were part of a continuing series of violations of Title 21, United States Code, undertaken by the defendant in concert with at least five other persons with respect to whom the defendant occupied a position of organizer, supervisor, and manager, and from which continuing series of violations the defendant obtained substantial income and resources.

All in violation of Title 21, United States Code, Section 848.

---

[8]    The indictment also charged Mr. Walker with conspiring to distribute at least 500 grams of cocaine in violation of 21 U.S.C. § 841(a)(1). ECF No. 36. However, the Court subsequently vacated the conspiracy conviction because it was a lesser-included offense of the CCE conviction charged in Count 2. ECF No. 594.  The Superseding Indictment is attached as Exhibit C.

Much like in *Moore*, Mr. Walker's CCE Conviction is a covered offense under the FSA. The indictment makes explicit that Mr. Walker's statute of conviction is § 848. The Indictment further clarifies that Mr. Walker's continuing criminal enterprise "knowingly and intentionally violated Title 21, United States Code, Section 841 (a)(1) and 846." Mr. Walker is eligible for a reduced sentence under § 404 of the First Step Act because his "covered offense" violated a federal criminal statute for which the penalties were reduced by the Fair Sentencing Act. The statutory penalties of 21 U.S.C. §§ 841(a)(1) and 848 were modified by the FSA. *United States v. Shaw*, 957 F.3d 734, 739 (7th Cir. 2020) ("In 2010, Congress passed the Fair Sentencing Act . . Section 2 of that Act, referred to in the First Step Act, changed the statutory penalties for crack offenses by increasing the quantity of crack required for imprisonment"). *See also United States v. Beamus*, 943 F.3d 789, 791–92 (6th Cir. 2019); *United States v. Smith*, 954 F.3d 446 (1st Cir. 2020); *United States v. Jackson*, 945 F.3d 315, 320 (5th Cir. 2019); *United States v. McDonald*, 944 F.3d 769, 772 (8th Cir. 2019); *United States v. Wirsing*, 943 F.3d 175, 185–86 (4th Cir. 2019). As a result, Mr. Walker's CCE conviction is a covered offense under the First Step Act and this Court is authorized to impose a reduced sentence under Section 404 of the First Step Act.

The existence of other non-crack offenses does not undermine the eligibility conclusion for First Step Act relief. *United States v. Burrell*, No. 97 CR 998-1 (RJD), 2020 WL 5014783, at *1 (E.D.N.Y. Aug. 25, 2020). In *Burrell*, the government conceded that the defendant's CCE conviction involving heroin and cocaine base was a covered offense despite the existence of mixed substances. Likewise, in the present case, the involvement of cocaine and cocaine base in Mr. Walker's CCE conviction does not foreclose him from

receiving First Step Act relief. In granting the defendant's motion and reducing his sentence the *Burrell* Court noted Section 404 of the First Step Act's remedial purpose as "plainly intended to be eligibility-expanding." Consequently, the existence of cocaine and crack cocaine does not prevent this Court from granting Mr. Walker's motion for First Step Act relief. Granting eligibility here comports with other Court decisions and the remedial aim of Congressional legislation.

It is simply the coincidence of time -- and not the severity of Walker's criminal conduct – that now buttresses his life sentence. This unwarranted disparity weighs in favor of reducing his sentence to 324 months.

### B.     Jerry Walker has *earned* a sentence reduction under Section 404 of the First Step Act.

*"My name is Keith Welch. I have been a Correctional Officer for the Bureau of Prisons for twenty seven years. In that time Inmate Jerry Walker #04582-089 is one of the most respectful inmates that I have ever supervised."*

-Letter of Support from BOP Senior Officer Keith Welch (Ex. B)

Because Mr. Walker is eligible for First Step Act relief, this Court has the discretion to impose a reduced sentence under Section 404(b): "A court that imposed a sentence for a covered offense may . . . impose a reduced sentence as if Section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed."

The Court should exercise its discretion to impose a reduced sentence of 324 months imprisonment for three reasons. **First**, Mr. Walker's conduct in prison and the work he has done to improve himself, even with no certainty that he would ever be released, are compelling indicia that his continued incarceration is greater than necessary.

**Second**, Mr. Walker has a sound release plan and family support to assist his return to the community. **Third**, Mr. Walker's continued life sentence is an unwarranted disparity that is directly at odds with the Fair Sentencing Act's remedial aim. These mitigating reasons will be discussed in turn.

### 1. Jerry Walker's conduct and work in prison have been outstanding.

*"I have worked in Corrections for over 23 years. This will be my first time ever writing one of these for an inmate. However, I do feel that if there were an inmate who would deserve a second chance … it would be Jerry Walker."*

-Letter of Support from BOP Staff Shannon Engelmann (Ex. B)

Mr. Walker has demonstrated that his life sentence does not mean that his life is wasted. Mr. Walker has no notable history of disciplinary issues or infractions in over two decades of incarceration. But his lack of disciplinary history is only part of his rehabilitative story. Perhaps the best metric to assess a prisoner's rehabilitation is what he or she has done to improve themselves even before the possibility of release appeared. With no certainty that he would ever see freedom again, Mr. Walker has worked daily to make meaning of his life.

It is often difficult to gauge the rehabilitate arc of a prisoner, based solely on the arguments of counsel. The most persuasive assessment of a prisoner's rehabilitation comes from the BOP prison staff that directly supervise him. Often, the Court is without this information or, at best, the Court must rely upon BOP data printouts that lack narrative observations. This case is different. A resounding number of BOP prison guards and

officials have written detailed letters supporting Mr. Walker's release. Those letters are

attached as Exhibit B and excerpted as follows:

| BOP Official | Character Recommendation |
|---|---|
| Shannon Engelmann BOP Employee FCI Pekin | **"I have worked in Corrections for 23 years. This will be my first time ever writing one of these for an inmate. However, I do feel that if there was an inmate who would deserve a second chance and get clemency, it would be Jerry Walker** . . . I pray that you take my words in consideration and that if he shall be granted this blessing, he truly makes it count in a positive way." |
| M. Johnson BOP Employee FCI Pekin | **"He has educated himself and became a mentor to many inmates at our institution.** By taking the first step in accepting his faults, he has turned his situation into a positive which is what we as individuals all strive to do each and every day." |
| Kenneth Jackson BOP Employee since 1994 FCI Pekin | "During my interactions with him I have noticed his respectful and calm disposition on a consistent basis. **I have also seen his interactions with other staff and inmates and never once has it been a behavior issue. He carries himself with dignity, respect and always displays a positive attitude."** |
| J. Scachette BOP Employee FCI Pekin | **"Out of the approximately 1,300 inmates that are incarcerated at this institution, Mr. Walker has stood out greatly for the last two years that I have worked at this location.** He is continually professional, courteous, energetic, and striving for improvement in every aspect." |
| J. Hunt Correctional Officer | "As far as I know, I can't think of any staff or inmate who would have negative things to say about Mr. Walker. **I believe Mr. Walker would become a very productive and contributing individual in society if given the chance."** |
| Al Thomas BOP Senior Officer | "**Over the course of my contact with Mr. Walker, he has exhibited nothing but model inmate behavior.** I only wish we were fortunate enough to have several hundred inmates that |

| | behaved as honorably as he, it would make life behind these walls so much easier for prison staff and inmates." |
|---|---|
| Kenneth Jackson BOP Cook Supervisor | "[Mr. Walker] carries himself with dignity, respect and always displays a positive attitude. Therefore I humbly submit this letter of recommendation with the sincere hopes that you would consider and afford Mr Walker another chance to be a productive person in society." |

These letters are only a few of the body of work Mr. Walker has amassed while serving a life sentence. There is much, much more. He has taken hundreds of hours of classes. He has earned numerous prison certificates and commendations. For example, he completed 296 hours of education and training to become a Certified Associate Addictions Professional. An alcohol and substance abuse treatment course, FCI Pekin was the first correctional facility in Illinois to offer the program. Curriculum includes courses on Clinical Evaluation and Screening, Ongoing Clinical Support, and Professional and Ethical Responsibility. Upon completing the one-year program, students receive a certificate which offers them an opportunity to enter the community and compete for an entry level position in the field of addiction and recovery treatment.



In 2009, Mr. Walker enrolled in Illinois Central College and was placed on the President's Honor List for his 4.0 grade point average.  In 2010, Mr. Walker earned a college certificate in Business Management.



**Illinois Central College**

Upon recommendation of the President and Faculty,
the Board of Trustees confers upon

**Jerry Walker**

a certificate in

**Business Management**

with all the rights, honors and privileges thereto.

In Witness Whereof, we here unto affix our signatures as authorized officers,
and the Seal of the College at East Peoria, Illinois, July 30, 2010.

Chair, Board of Trustees                                    President, Illinois Central College

### 2.    Mr. Walker has a sound release plan and family support.

Mr. Walker has an extensive support network that has allowed him to maintain a positive outlook in an otherwise bleak situation. In addition to close relationships with his immediate family, Mr. Walker remains connected to his hometown and has immeasurable support within the Milwaukee community. Milwaukee community members have written over 100 letters in support of Mr. Walker and detail what his release would mean for their city[9]. Their support will continue upon Mr. Walker's release and will allow him to successfully transition back into society. Additionally, Mr. Walker has spent his time incarcerated in a constructive manner by, among other things, completing re-entry courses and programs that will help him procure a job and re-integrate into society. These courses

---

[9]    These among other letters of support from Milwaukee community members are attached as Exhibit E.

include: Re-Entry Trap, Resume Maker, Career Preparation, Job Fair Interview, Mock Job Fair, Resume Writing, Job Portfolio, Start Your Own Business and Reintegration: The Real World, Everyday Life.

Mr. Walker's goal is to be a beacon of light for the city of Milwaukee, assisting those in need while using his story to help others.

> *"Life is shaped by the body of our experiences, I am cognizant of the immense wisdom one can amass when fully awake. This entire experience has been a maturing process God intended for my life. I was a dark ominous cloud blanketing my community. As my word and actions attests. I stand at the ready to engage and serve my community anew, to be a catalyst for lasting change. I believe I am called to be that face.*
>
> > \- Statement of Mr. Jerry Walker[10]

He has written a book, containing letters of contrition and reflection entitled "Dear Milwaukee" dedicated to his hometown and its resilient citizens.[11]

A fulltime job awaits Mr. Walker if he is released. Michael Hawthorne of Hawthorne Developments LLC has offered employment to Mr. Walker as a general home improvement laborer:



---

[10]    Statements attributed to Jerry Walker throughout this brief are taken from conversations and letters with his counsel, unless otherwise indicated.

[11]    "Dear Milwaukee" by Jerry Walker is attached as Exhibit F.

We have attached a number of letters from family, friends and Milwaukee community members who comprise Mr. Walker's reentry support network. An excerpt of these letters attesting to Mr. Walker's character can be found below:

| Community Ally | Observation & Letter of Support |
| --- | --- |
| Bridgette Bivens<br>Family Friend | "Jerry has been in prison over 20 years, during critical years of his son's life. . . Mr. Walker has always been a loving and devoted father. I truly believe he is a changed man. Jerry is a very spiritual and intelligent person who has a deep concern about the community he grew up in. The City of Milwaukee needs Jerry. The youth in the city need positive male role models, to help teach and guide them on the right path. I truly believe he would be an asset to our city." |
| Tasha Foxx<br>Friend of Jerry Walker | "Throughout his time in prison Jerry has had a profound impact on his son's life as well as friends and family. Jerry often helped him with his schoolwork, corresponding with him through mail and phone calls many times during visits. He always shared with his son the reason why he was not present in his life and all the wrong he had done. He encouraged his son not to repeat his mistakes and strive to become a good, upstanding citizen." |
| Anita Brown<br>Friend of Jerry Walker | "In this day and age I believe Jerry can use his life testimony, to share with people who are at risk of making the same mistakes as he did. I know for a fact that Jerry is sorry for the things he did in the past. Jerry is passionate to make a better future out of the life he has left. He is eager to learn new things and willing to give any help possible. Jerry and our economy can both benefit, if he is released back into society as a free man." |
| Caprice Williams<br>Friend of Jerry Walker | "He will be a good positive role model to the youth here in Milwaukee, Wisconsin. He will be able to influence them not to make the same mistakes he has made in the past. He can encourage them to take a more positive path in their lives such as getting an education and finding a job as he taught his own son from prison." |

| Richard Bivens Co-Defendant & Friend of Jerry Walker | "In 1996 Jerry and I were indicted on federal charges of conspiracy. I testified against my friend in open court. It was the most shameful thing I had ever done. That haunted me for many years. After 20 years of not speaking to him I decided to send him a letter on his birthday, not expecting a response. Jerry called me and told me he loved me and forgave me. Him saying that to me lifted a weight off my shoulders." |
|---|---|
| Carvester Carver Co-Defendant & Friend of Jerry Walker | "I believe that he is a perfect example of what America is about, second chances, this a man who I feel has earned and continues to earn a second chance at life and freedom. Even from prison he continues to be a voice of reason and understanding in our community." |
| Sean Meadows Fellow Inmate at FCI Pekin | "I have now been at Pekin for nearly ten months. During this time, I have witnessed the same kindness and generosity that I experienced, shared with most inmates. He mentors and leads men of all ages on varying topics ranging from family affairs, to faith, to general life. There are men here, that are in all stages of life, that intently listen to him as he helps mold them into the men that they can become. Inmates look to his example and try to emulate him; I am aware of these men, because I am one of them." |
| Brenda Walker Sister of Mr. Walker | "Recently, I graduated with my Associate Degree in Criminal Justice. I must say that I truly have my brother to thank. His motivation and constant reassurance made me feel like I could do it. Not only has he been a great Father, but he is a great brother, and son." |

**3.     There is a compelling need to avoid unwarranted sentencing disparities in this case.**

The remedial purpose of the Fair Sentencing Act is to address sentencing disparities.

Among the nine co-defendants, Mr. Walker was the only one who received a life sentence

and he is the defendant who remains incarcerated.

All other 8 co-defendants have been released from prison, one defendant, Sharon Hayes, as early as 1999. Mr. Walker is still incarcerated to this day. Mr. Jerry Walker's sentence is unfair when compared to his other co-defendants. It would be a grossly unwarranted disparity for Mr. Walker to serve a life sentence while all of the other co-defendants are free individuals.

## IV. CONCLUSION

In spite of his good will, self-improvement and relentless dedication to his family and beloved community, this native son of Milwaukee is destined to never be a free man. For 25 years, Mr. Walker has parented behind bars; yet he was unable to attend his son's college graduation. For 25 years, Mr. Walker has taken steps to better himself; yet is still unable to apply his skills firsthand to the advancement of his city.

Mr. Walker's metamorphosis and countless good deeds are reflected in his 25-year rehabilitation. For the first time the Court can fashion an appropriate sentence that takes into account Mr. Walker's rehabilitative behavior and the remedial aim of America's revised crack laws. Given Mr. Walker's glowing prison record, **a sentence of 324 months is sufficient but not greater than necessary.**

WHEREFORE the First Step Act grants the district court authority to reduce sentences imposed under the punitive law that Congress has now outlawed. Defendant Jerry Walker is eligible for a sentence reduction under Sections 404(b) of the First Step Act. He undoubtedly has earned this reduction and asks that this Court reduce his total imprisonment to a total term of 324 months imprisonment on Count 2 (CCE).

Respectfully submitted,

/s/ Calyssa Zellars
CALYSSA ZELLARS

TDC LAW OFFICE
1325 S. Wabash Ave. Suite 305
Chicago, IL 60605

*Counsel for Jerry Walker*

## <u>**CERTIFICATE OF SERVICE**</u>

The undersigned, Calyssa Zellars, an attorney with The Decarceration Collective hereby certifies that on November 18, 2020 I electronically filed the following with the Clerk of the Court using the CM/ECF system:

**DEFENDANT JERRY WALKER'S MOTION
TO REDUCE HIS LIFE SENTENCE
PURSUANT TO SECTION 404 OF THE FIRST STEP ACT**

<u>/s/ Calyssa Zellars</u>
CALYSSA ZELLARS

TDC LAW OFFICE
1325 S. Wabash Ave. Suite 305
Chicago, IL 60605

*Counsel for Jerry Walker*