# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

                     Plaintiff,

v.

JERRY WALKER,

                     Defendant.

Case No. 96-CR-04-1-JPS

**ORDER**

## 1.    INTRODUCTION

Before the Court are Defendant Jerry Walker's alternative requests for a sentence reduction or compassionate release under two separate provisions of the First Step Act. Mr. Walker argues that the Court is authorized to revisit his sentence, and implement the Fair Sentencing Act's mandate to correct sentencing disparities between crack and powder cocaine offenses, because his continuing criminal enterprise (CCE) conviction, which was predicated in part on crack cocaine-related conduct, is a covered offense under Section 404 of the First Step Act. ECF No. 621. As an alternative or additional basis for eligibility, Mr. Walker argues that his age, health condition, and past COVID-19 diagnosis put him at higher risk for severe illness should he remain incarcerated, and so make him a candidate for compassionate release. ECF No. 625. He further argues that, if found eligible for consideration on either basis, he is entitled to relief because his post-sentencing conduct demonstrates significant rehabilitation, such that sentence modification or early release is appropriate. ECF Nos. 621 and 625. The United States contests Mr. Walker's

eligibility for relief under both Section 404 and the compassionate release vehicle, as well as his entitlement to resentencing.

Mr. Walker's motion is now fully briefed. ECF Nos. 621, 625, 626, 632, 634, 635, 637, 640, 641.[1] Upon consideration of the parties' submissions, the Court must deny Mr. Walker's motion for sentence reduction pursuant to Section 404 of the First Step Act, ECF No. 621, because it finds that the CCE offense for which Mr. Walker is currently incarcerated is not a covered offense for purposes of the Fair Sentencing Act and First Step Act. The Court is also obliged deny Mr. Walker's motion for compassionate release, ECF No. 625, because the Court finds that his health circumstances do not amount to an extraordinary and compelling reason warranting his release.

---

[1]Mr. Walker filed his opening Section 404 motion on November 18, 2020. ECF No. 621. The Court issued a briefing schedule on December 9, 2020, giving the United States until December 23, 2020 to respond. ECF No. 623. On December 15, 2020, Mr. Walker supplemented his initial motion with an additional filing, styled as a "Status Report re Emergency Motion for Compassionate Release," invoking his recent COVID-19 diagnosis and Section 603 of the First Step Act, the compassionate release provision, as an additional basis for his release from incarceration. ECF No. 625.

The government responded to Mr. Walker's initial Section 404 motion on December 22, 2020, ECF No. 626, and to his second filing on April 1, 2021, ECF No. 634. Mr. Walker replied to the government's briefs on, respectively, March 25, 2021, ECF No. 632, and on April 1, 2021, ECF No. 635. The United States updated its filing regarding Mr. Walker's compassionate release motion on August 5, 2021, ECF No. 637. Mr. Walker filed a reply to this filing, advancing arguments on his Section 404 claim as well as his compassionate release claim, on August 10, 2021, ECF No. 640. Mr. Walker additionally brought supplemental authority on the issue of Section 404 eligibility to the Court's attention on September 8, 2021. ECF No. 641.

Although the procedural propriety of some of these submissions is unclear, the parties do not dispute this issue; in the interest of addressing all of Mr. Walker's claims with finality, the Court has considered all submissions.

Case 2:96-cr-00004-JPS   Filed 02/21/23   Page 2 of 31   Document 642

## 2. FACTUAL BACKGROUND

### 2.1 Criminal History

In 1996, Mr. Walker was charged with:

- Eight counts of possession with the intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2;

- One count of conspiracy to distribute "in excess of 500 grams of cocaine," in violation of 21 U.S.C. §§ 841(a)(1) and 846 and 18 U.S.C. § 2;

- One count of engaging in a continuing criminal enterprise (CCE), on the basis of "but not limited to" (1) his involvement in the aforementioned conspiracy and possession counts; (2) Walker's position as "organizer, supervisor, and manager" of these activities; and (3) his receipt of substantial income from these activities, in violation of 21 U.S.C. § 848; and

- One count of money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and (a)(2).

ECF No. 621-3 (reproducing ECF No. 36, Superseding Indictment). His eight codefendants faced varying combinations of these charges.

Mr. Walker's case was originally assigned to Judge Rudolph T. Randa, who presided over the subsequent jury trial. On November 14, 1996, a jury convicted Mr. Walker on all eleven counts. ECF No. 213. The trial garnered considerable public attention. *See, e.g.*, ECF No. 239 (Milwaukee Journal Sentinel's petition to access court records as to three defendants including Mr. Walker). Some details about how the government characterized the drugs that served as the basis for Mr. Walker's prosecution and conviction are relevant to how he has argued his eligibility for sentence reduction, and accordingly are included here.

The criminal complaint names "possess[ion] with intent to distribute cocaine base," i.e., crack cocaine, as the basis for Mr. Walker's arrest. ECF No. 632-3 at 1; *see also* ECF No. 1. In the complaint, a DEA agent states that

on three occasions in November 1995 he witnessed a confidential informant purchase drugs—interchangeably referred to as "crack," "crack cocaine," and/or "cocaine"—from Mr. Walker. ECF No. 632-3 at 2–3. However, these specific references to crack cocaine did not appear in the government's formal charging document. Counts One and Three to Ten of the Superseding Indictment charged Mr. Walker with, respectively, "conspir[acy] … to possess with intent to distribute in excess of 500 grams of cocaine" and "possession with intent to distribute cocaine." ECF No. 621-3 at 3, 5. Count Two of the Superseding Indictment—the CCE charge—incorporated all the other charged counts by reference but did not identify any particular drugs or drug quantities as the basis for the charge. *Id.* at 4.

At trial, it appears that the government introduced the crack cocaine sold during the aforementioned confidential informant transactions as evidence of the defendants' guilt as to Counts Eight, Nine, and Ten of the Superseding Indictment—all charges of possession with intent to distribute cocaine. *See* ECF No. 632-4 at 2–3 (reproducing government's response to codefendant Roy Evans's motion for judgment of acquittal). These particular crack cocaine transactions apparently totaled four ounces. *See id.* at 2. However, the government apparently did not request any specific jury findings as to the drug types or quantities involved in any of the charged offenses. ECF No. 621 at 5.

Judge Randa presided over the sentencing phase of the case, at which time the government again referenced Mr. Walker's involvement in these three crack cocaine transactions, totaling four ounces. *See* ECF No. 632-2 at 11 (reproducing government's response to Defendant's objections to the Pre-Sentencing Report, with government stating that "[s]mall quantities of cocaine and crack were sold out of Walker's drug houses");

ECF No. 632-5 at 14–15 (reproducing Pre-Sentencing Report that references Mr. Walker's selling to a confidential informant one ounce of crack on November 2, 1994, one ounce of crack on November 2, 1995, and two ounces of crack on November 14, 1995).

At sentencing, Judge Randa attributed at least 150 kilograms of cocaine to Walker. ECF No. 621 at 5; *see also* ECF No. 632-5 at 15. No judicial finding was made as to any crack cocaine amounts. ECF No. 621 at 5. Mr. Walker was subject to a pre-*Booker* mandatory guideline life sentence on the CCE and conspiracy counts. ECF Nos. 621 at 6 and 632-5 at 1. This guideline was the result of his criminal history category of IV and his total offense level of 46, adjusted upward from his base offense level of 38 due to the use of a gun, his leadership role, and efforts to obstruct justice. ECF Nos. 621 at 5, 626 at 4, and 632-5 at 21. In setting the sentence, Judge Randa additionally took notice of an uncharged offense—Mr. Walker's alleged execution-style killing of a teenager named Michael Ware—and found this accusation more likely than not true. ECF Nos. 626 at 3–4 and 626-2 at 3. Ultimately, Judge Randa imposed life sentences for both the CCE and conspiracy counts, and 240-month sentences for each of the drug and money laundering counts, all to run concurrently. ECF 322 at 3.

Mr. Walker has pursued many avenues to have his conviction and confinement revisited. He directly, and successfully, appealed his conspiracy conviction pursuant to *Rutledge v. United States*, 517 U.S. 292 (1996), which held that a conspiracy charge is a lesser included offense of a CCE charge. *See* ECF No. 324; ECF No. 626 at 5. In October 1998, the Seventh Circuit agreed and vacated Mr. Walker's conspiracy charge. ECF No. 412. Mr. Walker filed a petition for habeas relief under 28 U.S.C. § 2255, arguing ineffective assistance of counsel, which Judge Randa denied. ECF No. 471.

He also filed a motion arguing that Amendment 782 to the United States Sentencing Guidelines entitled him to a reduced sentence, which Judge Randa also denied because the changed sentencing guidelines did not affect Mr. Walker's applicable guideline range. ECF No. 571.

After Judge Randa's death, Mr. Walker's case was reassigned to this Court in 2017. Soon after, the Court amended its judgment to reflect the 1998 dismissal of the conspiracy charge. ECF No. 594. Mr. Walker subsequently moved this Court to conduct a full resentencing, but the Court declined to do so, and the Seventh Circuit declined to hear any further argument. ECF Nos. 609 and 610. According to his memoir, "Dear Milwaukee: Letters 2016–2020," he also petitioned the Obama administration for an executive pardon in 2016, with an endorsement from the Assistant United States Attorney who led his prosecution, but his request was denied. ECF 621-6 at 16–23.

Mr. Walker has been in federal custody since December 1995 and has served about 27 years of his life sentence. ECF No. 626 at 5. Because Mr. Walker's conspiracy count was vacated and the 240-month concurrent sentences on his remaining drug convictions have all run their course, his CCE conviction and life sentence under 21 U.S.C. § 848, Count 2 in the Superseding Indictment, is the sole basis for his continued confinement. ECF Nos. 621 at 6 and 626 at 5. He is currently imprisoned at Pekin Federal Correctional Institution ("FCI Pekin"). ECF 625 at 2.

## 2.2 Post-Sentencing Rehabilitation

Mr. Walker has provided the Court with extensive documentation of his character growth since his term of incarceration began, and his future plans and support network if granted relief. Specifically, he points to his lack of disciplinary infractions while imprisoned; his participation in

Case 2:96-cr-00004-JPS   Filed 02/21/23   Page 6 of 31   Document 642

educational programs; statements of support by correctional staff and peers; and his prospects for work and community engagement on reentry.

Mr. Walker first notes that, over the 27+ years that he has been in prison, he "has not received a single disciplinary infraction." ECF No. 621 at 2. In a 2016 review of his performance in the prison work program, his supervisor ranked him either "good" or "outstanding" in all areas. ECF No. 621-2 at 18. He gives myriad examples of how he has dedicated his time of incarceration to personal growth, earning various educational and professional credentials, awards, and honors. He completed just shy of 300 hours of training to become a Certified Associate Addictions Professional, a credential that allows him to "compete for an entry level position in the field of addiction and recovery treatment." ECF No. 621 at 15. He earned his GED while in prison. ECF No. 621-4 at 4–5. He went on to earn a certificate in business management from Illinois Central College in 2010, and during one semester earned a 4.0 GPA and a spot on the President's Honor List. ECF No. 621 at 16. The list of programs he has completed spans four pages and includes titles such as "Parenting from a Distance," "Anger Management," "Confronting Addictions," "Effective Communication," "Reintegration: The Real World, Everyday Life," "Career Preparation," and "Start Your Own Business," ECF No. 621-4 at 2–5.

Mr. Walker's growth and character is also reflected in the observations of BOP staff who supervise him and of his peers and loved ones both inside and outside of prison. Fifteen BOP staff wrote in support of Mr. Walker's 2016 request for executive clemency, and Mr. Walker enclosed their letters with his motion. ECF No. 621-2 at 2–17. For example, his housing supervisor Lance Leitner, who has twenty years' experience working for the BOP, states that Mr. Walker

perform[s] his assigned duties with a degree of pride not normally seen here. . . . Mr. Walker is without question one of the most respectful, polite and genuine men I have supervised . . . From my personal interactions with him I sense a remorseful man who takes complete responsibility for the actions which led him to this juncture in his life.

ECF No. 621-2 at 7–8. Similarly, nearly 60 of Mr. Walker's family, friends, and community peers (including some of his codefendants in this federal prosecution) wrote letters expressing support for his release. *See generally* ECF No. 621-5. These letters highlight Mr. Walker's dedication to his children, potential to serve as a positive influence in his community, and character for kindness and generosity. *Id.*

In addition to social support from his supervisors, peers, and loved ones, Mr. Walker has submitted evidence of a thoughtful reentry plan should he be released. He has secured an offer of full-time employment with Hawthorne Developments, LLC, ECF No. 621 at 17, and of prospective speaking engagements with a nonprofit organization specializing in addiction recovery, ECF No. 640-2. Finally, Mr. Walker demonstrates efforts to internalize the gravity of his crimes and repair the harm he has done. He has written "letters of contrition and reflection" and candid commentary about his life choices in his book "Dear Milwaukee: Letters 2016–2020." ECF No. 621 at 17. Mr. Walker says in his own words, in an audio recording submitted along with his reply brief, that on release he hopes to connect with youth at risk of criminal behavior as a way to "help clean up some of the mess [he's] done in life." ECF No. 636.

## 2.3 Defendant's Age, Health Conditions, and the COVID-19 Pandemic

Mr. Walker tested positive for COVID-19 in December 2020. ECF No. 625 at 2. In January 2021, he was designated "recovered" by prison staff.

ECF No. 632 at 15. However, in March 2021, he stated to his attorneys that he continued to experience "body soreness, chills, debilitating headaches, and shortness of breath." *Id.* At the time he tested positive, he was 54 years old. ECF No. 625 at 2. He suffered "a stroke 10 years ago that permanently damaged his verbal communication," and has "fluctuating blood pressure." ECF No. 632 at 16. He contends that because of his age and underlying condition(s), he is at risk for severe illness should he contract COVID-19 again, and for other health complications associated with the virus. *Id.*

As of February 17, 2023, FCI Pekin reports one active inmate case and one active staff case of COVID-19.[2] There have been no inmate or staff deaths from the virus; 741 inmates, including Mr. Walker, have recovered from the virus.[3] As of May 11, 2021, Mr. Walker had received both doses of the Moderna vaccine. ECF No. 637. Neither party has updated the Court as to whether he has received a booster dose.

3. **LEGAL STANDARD**

   3.1 **Eligibility for First Step Act Section 404 Sentence Reduction**

   In 2010, Congress passed the Fair Sentencing Act. Pub. L. No. 111-220, 124 Stat. 2372 (2010). The act was intended to reduce the disparity between sentences for powder and crack cocaine offenses. *Dorsey v. United States*, 567 U.S. 260, 268–69 (2012). To do so, the act greatly increased the quantities of crack cocaine needed to trigger progressively harsher statutory penalties. *See* 124 Stat. 2372 § 2–3.[4] Congress later passed the First

---

[2]Fed. Bureau Prisons, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/ (last visited Feb. 17, 2023).

[3]*Id.*

[4]"[T]he Fair Sentencing Act changed the quantity [of crack cocaine] that triggers certain penalties of imprisonment. Under § 841(b)(1)(A), the threshold

Step Act of 2018, which made it possible for already-sentenced defendants to request that district courts retroactively apply the penalty modifications of the Fair Sentencing Act to their case. Pub. L. No. 115-391, 132 Stat. 5194 §§ 404(a)–(b) (2018) ("Section 404"); *see also* 18 U.S.C. § 3582(c)(1)(B) (courts cannot modify a term of imprisonment once imposed except where expressly permitted by statute). The Seventh Circuit has noted the First Step Act's "remedial purpose . . . of addressing disparities in sentencing." *United States v. Fowowe*, 1 F.4th 522, 532 (7th Cir. 2021).

The Court must consider a defendant's motion for Section 404 relief in two steps: eligibility and entitlement. *United States v. Shaw*, 957 F.3d 734, 736 (7th Cir. 2020) ("First, may the court reduce the sentence? And second, should the court reduce the sentence?"). Eligibility for a Section 404 sentence reduction requires that 1) the defendant's sentence was imposed for a "covered offense" whose statutory penalties were modified by the Fair Sentencing Act; 2) the defendant committed the offense that is the basis of his sentence and confinement before August 3, 2010; 3) the defendant was not already sentenced or resentenced under the provisions of the Fair Sentencing Act; and 4) the motion in question is the defendant's first First Step Act motion to be reviewed on its merits. § 404(a), (c), 132 Stat. 5194.

### 3.2    Eligibility for Compassionate Release

Mr. Walker additionally seeks sentence modification under a separate provision of the First Step Act, the "compassionate release" provision. *See* P.L. 115-391, 132 Stat. 5194 (2018) at § 603. Such motions

---

quantity increased from 50 grams to 280 grams; and under § 841(b)(1)(B), the threshold quantity increased from 5 grams to 28 grams. These changes reflected a recognition that the tremendous disparities in punishment of powder-cocaine and crack-cocaine offenses disparately impacted African Americans." *Shaw*, 957 F.3d at 737.

include a procedural exhaustion requirement. The Court can modify a term of imprisonment "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or thirty days after the warden at the defendant's facility has received such a request for release, "whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

In addition to administrative exhaustion, eligibility for compassionate release requires a showing of "extraordinary and compelling reasons warrant[ing] such a reduction[.]" *Id.* § 3582(c)(1)(A)(i).

While § 3582(c)(1)(A) instructs that a reduction must also be "consistent with applicable policy statements issued by the [United States] Sentencing Commission," this circuit recently held that the relevant policy statement, U.S.S.G. § 1B1.13, is inapplicable to prisoner-initiated motions for compassionate release. *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020). Therefore, a court has discretion when determining what constitutes an "extraordinary and compelling" reason warranting compassionate release. *Id.* ("[T]he trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion. Any decision is 'consistent with' a nonexistent policy statement."). A district court may also "make the same determinations that would normally be left to the Director of the Bureau of Prisons [under the catchall provision at U.S.S.G. § 1B1.13 n.1(D)]." *United States v. Brown*, Case No. 01-CR-196-JPS, 2020 WL 4569289, at *4 (E.D. Wis. Aug. 7, 2020). Yet, this Court will evaluate prisoner-initiated motions for compassionate release with due regard for the guidance provided in § 1B1.13 because it "provide[s] a working definition of 'extraordinary and compelling reasons' . . . [which] can guide discretion without being conclusive." *Gunn*, 980 F.3d at 1180; *see also United States v. Mays*, Case No.

1:08-cr-00125-TWP-DML, 2020 WL 7239530, at *3 (S.D. Ind. Dec. 9, 2020) (evaluating compassionate motions brought under the "extraordinary and compelling" prong of § 3582(c)(1)(A) with "due regard" for § 1B1.13).

The commentary to the Sentencing Guidelines explains that "extraordinary and compelling reasons exist" when "[t]he defendant is suffering from a terminal illness, (i.e., a serious and advanced illness with an end of life trajectory)," such as cancer or advanced dementia. U.S.S.G. § 1B1.13 n.1.(A)(i). The commentary also considers a defendant's medical condition to be an extraordinary and compelling reason if:

> [t]he defendant is suffering from a serious physical or mental condition, suffering from a serious functional or cognitive impairment, or experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* § 1B1.13 n.1.(A)(ii).

### 3.3 Entitlement to Relief

After determining a defendant is eligible for resentencing, prior to modifying a term of imprisonment under either Section 404 of the First Step Act or the compassionate release vehicle, the Court must also consider the sentencing factors set forth in 18 U.S.C. § 3553(a), if applicable. 18 U.S.C. § 3582(c)(1)(A); *see also Shaw*, 957 F.3d at 740. Pursuant to § 3553(a), when determining the sentence to be imposed, the Court shall consider, among other things: the nature and circumstances of the offense; the defendant's history and characteristics; and the need for the sentence to (1) reflect the seriousness of the offense, promote respect for the law, and provide just punishment, (2) afford adequate deterrence, (3) protect the public, and (4) provide the defendant with effective training, care, and/or treatment.

## 4.    ANALYSIS

### 4.1    Eligibility for First Step Act Section 404 Sentence Reduction

The crux of the parties' disagreement is whether Mr. Walker's CCE conviction under 21 U.S.C. § 848 is a "covered offense" whose statutory penalties the Fair Sentencing Act modified.[5] Mr. Walker argues that his CCE conviction is a covered offense because the Fair Sentencing Act modified the statutory penalty for at least one subsection of § 848—it raised the quantity of crack cocaine needed to trigger a mandatory life sentence under § 848(b)(2)(A), which incorporates 21 U.S.C. § 841(b)(1)(B). ECF No. 621 at 9–10 (citing *United States v. Moore*, No. 95 CR 509-2, 2020 WL 4748154 (N.D. Ill. Aug. 17, 2020) and arguing district courts may construe § 848, as a whole, as the defendant's statute of conviction). In other words, Mr. Walker argues that, even if he was not himself explicitly charged or convicted under § 848(b)(2)(A), he was charged and convicted under *§ 848*, for which the Fair Sentencing Act modified at least one penalty. He further argues that his offense is a covered offense because his CCE charge incorporated by reference and "involved multiple crack transactions" and his conviction thereto was partially secured through presentation of crack cocaine evidence. *Id.* at 9 (citing *Hall v. United States*, No. 2:93-CR-162-RAJ (E.D. Va. Mar. 2, 2020); ECF No. 632 at 1, 4–11, 13; *see also id.* at 4 ("If Walker's CCE offense involved cocaine base, also a form of cocaine, then he is eligible for First Step Act relief.").

The Government counterargues that Mr. Walker "was convicted only of offenses involving cocaine" and—since the Fair Sentencing Act did not alter the amount of *powder* cocaine required to trigger the revised

---

[5]Indeed, the parties do not dispute any of the other three requirements for Section 404 eligibility. *See* § 404(a), (c), 132 Stat. 5194.

statutory penalty ranges—he "has not been convicted of a covered offense." ECF No. 626 at 6. The Government concedes that "there is some evidence of a small amount of crack cocaine involved in the conspiracy," but emphasizes that "no offenses involving crack cocaine are charged in the indictment," and urges the Court to conclude Mr. Walker is First Step Act-ineligible. *Id.*

Mr. Walker replies that the fact that crack cocaine was part of the underlying factual basis for his prosecution—despite not being charged or convicted as such—means his CCE conviction is First Step Act eligible, because crack and powder cocaine are "two forms of the same drug," ECF No. 632 at 2–3 (citing *Kimbrough v. United States*, 552 U.S. 85, 94 (2007) and *United States v. Kelly*, 519 F.3d 355, 359 (7th Cir. 2008)). He argues that to hold otherwise would require the Court to "make an erroneous and unsupported finding that powder cocaine was the sole drug charged in Count 2" and "make a new post-conviction drug finding to limit Mr. Walker's First Step Act eligibility." *Id.* at 4. Mr. Walker offers supplemental authority that shows the Government apparently conceding that, before *Apprendi v. New Jersey*, 530 U.S. 466 (2000), use of the umbrella term "cocaine" in charging documents did not necessarily mean the offense did not involve crack cocaine or exclusively involved powder cocaine; therefore, "the failure to charge a specific type or amount of cocaine does not categorically exempt a defendant from First Step Act eligibility." ECF No. 641 at 3 (citing and discussing Appellee Brief, *United States v. Saldana*, Nos. 20-14490-HH and 21-10634-HH (11th Cir. Aug. 19, 2021), ECF No. 28).

The Court preliminarily turns to identifying the starting point for determining Mr. Walker's eligibility to be considered for resentencing. The Seventh Circuit held in 2020 that, in determining whether a defendant's

conviction is for a "covered offense" whose statutory penalties the Fair Sentencing Act modified, "the statute of conviction alone"—not the defendant's particular violation of that statute—controls the question of that defendant's eligibility for consideration. *Shaw*, 957 F.3d at 739. Both parties argue under the *Shaw* standard about whether 21 U.S.C. § 848 is a covered offense and, relatedly, about how the fact that his CCE conviction under this statute was not charged as a crack cocaine offense but was, to some extent, proven with crack cocaine evidence, pertains to his eligibility for resentencing. However, Supreme Court case law that post-dates most of the briefing in this case casts new light on *Shaw*'s approach to eligibility. The Court therefore closely examines those cases together.

*Shaw* was the consolidated appeal of four defendants who were convicted of possession with intent to distribute or conspiracy offenses involving amounts of crack cocaine that exceeded both the original statutory thresholds *and* the post-Fair Sentencing Act increased thresholds that triggered mandatory minimum penalties. *Id.* at 738 (noting that two defendants possessed 33.8 and 32.7 grams of crack, which "exceeded the 28-gram threshold," and two conspired to distribute 2.91 kilograms and 8.4 kilograms, also "well over the 280-gram threshold"); *see also supra* note 4. The Seventh Circuit rejected the government's contention that the defendants were ineligible for resentencing under the Fair Sentencing Act, as made retroactively applicable by the First Step Act, "because the quantities of crack involved in each defendant's offense exceeded the new quantity thresholds set by the Fair Sentencing Act." *Id.*

In the appellate court's view, it did not matter that the defendants— if sentenced at present and considering the crack cocaine amounts involved in their offenses—would still have been subject to the same mandatory

minimum penalty under the same statutes as they would have been *before* the Fair Sentencing Act amended the mandatory-minimum threshold amounts in those statutes. *See id.* at 738–40. These defendants were eligible to be considered for resentencing because (1) their offenses involved crack cocaine and (2) the statutes under which they were convicted, and moreover the penalties authorized by those statutes relative to the amounts of crack cocaine involved, were modified by the Fair Sentencing Act and the First Step Act. *See id.* In reaching this conclusion, the Seventh Circuit also rejected conducting a "fact-specific inquiry into the particular circumstances of the offense" to determine eligibility for resentencing pursuant to the Fair Sentencing Act and the First Step Act. *Id.* at 739. Instead, the appellate court concluded that "the Fair Sentencing Act modified the penalties for crack offenses as a whole, not for individual violations," *id.*, and therefore adopted a categorical and decidedly more comprehensive approach to determining eligibility for resentencing.[6]

---

[6]The Seventh Circuit extended this approach in a subsequent case where it reversed a district court's conclusion that a defendant, who was charged with and convicted of possessing with intent to distribute 0.5 grams of crack cocaine, was ineligible for resentencing. *United States v. Hogsett*, 982 F.3d 463, 468 (7th Cir. 2020) ("[T]he Fair Sentencing Act modified the statutory penalties for § 841(b)(1)(C), so all convictions under that subsection—regardless of whether they are subject to a different penalty range—are 'covered offenses.'"). To reach that result, the Seventh Circuit concluded that the defendant's statute of conviction was modified by the Fair Sentencing Act because, although the statute applied to offenses involving *unspecified* amounts of crack, after the Act, it "began—for the first time—to cover convictions involving quantities between 5 grams and 28 grams." *Id.* at 467 (also reasoning that "we do not think that a modification must be limited to solely textual alterations; instead, any moderate change[] . . . will suffice" (internal citation and quotation marks omitted)). In other words, the *Hogsett* court embraced what could be described as a modification-by-extension approach. However, the opinion was later vacated and this approach was rejected. *See United States v. Hogsett*, 850 F. App'x 452 (7th Cir. 2021) (vacating prior reversal and affirming district court's denial of Hogsett's eligibility and motion in light of *Terry*).

Case 2:96-cr-00004-JPS   Filed 02/21/23   Page 16 of 31   Document 642

A little over a year after the *Shaw* decision, on June 14, 2021, the Supreme Court decided *Terry v. United States*. 593 U.S. ____, 141 S. Ct. 1858 (2021). *Terry* concerned a defendant who was charged with and pleaded guilty to possession with intent to distribute an unspecified amount of crack cocaine, an offense under 21 U.S.C. § 841(a); at sentencing, the district court determined that his offense involved about four grams of crack. 141 S. Ct. at 1861. Under 21 U.S.C. § 841(b)(1)(C), this offense did not carry a mandatory minimum term of imprisonment. *Id.* at 1860–61. When the defendant sought resentencing pursuant to the Fair Sentencing Act and the First Step Act, the district court held, and the Eleventh Circuit affirmed, that he was ineligible for such relief because "offenders are eligible for a sentence reduction only if they were convicted of a crack offense that triggered a mandatory minimum," and defendant did not fall into that category. *Id.* at 1862.

The Supreme Court unanimously agreed, with Justice Sotomayor concurring in part and concurring in the judgment, and affirmed. To reach this result, the Court, in an opinion by Justice Thomas, first examined the plain language of the First Step Act, which defines a "covered offense" (i.e. offenses eligible for retroactive application of the Fair Sentencing Act) as "'a violation of a Federal criminal statute, the statutory penalties for which were modified by' certain provisions in the Fair Sentencing Act." *Id.* (quoting Section 404). Justice Thomas further explained that "'statutory penalties' references the entire, integrated phrase 'a violation of a Federal criminal statute[]' . . . [a]nd that phrase means 'offense.'" *Id.* (internal citations omitted). In other words, the phrase "statutory penalties" "directs our focus to the statutory penalties for petitioner's *offense*, not the statute or statutory scheme." *Id.* at 1863. Accordingly, Justice Thomas found although

the particular defendant had indeed committed a crack offense, the First Step Act did not modify the statutory penalties for his particular offense—which triggered no mandatory minimum—and therefore he was ineligible to be considered for resentencing. *See id.* at 1863–64 (opining that it "defies common parlance to say that altering a *different* provision modified subparagraph (C)").[7]

While the facts and merits of these two cases—which are not about 21 U.S.C. § 848, Mr. Walker's statute of conviction—may seem tangential to the issue of his eligibility, the dialectic between them guides the Court's decision today. Indeed, the Seventh Circuit has not yet had occasion to rule on whether 21 U.S.C. § 848 is a covered offense for First Step Act purposes, and moreover has not directly articulated how *Terry* impacted *Shaw*'s embrace of a categorical, statute-of-conviction approach to determining eligibility.[8] The Court therefore additionally looks to the Fourth Circuit's

---

[7]Justice Sotomayor maintained that the Court's reasoning and conclusion demonstrated that "some people have been left behind" by the Fair Sentencing Act and First Step Act. *Id.* at 1864 (Sotomayor, J. concurring). However, she agreed with the Court's statutory interpretation and diagnosed both the problem and the solution as one of legislative drafting:

> [T]he bipartisan lead sponsors of the First Step Act have urged this Court to hold that the Act 'makes retroactive relief broadly available to all individuals sentenced for crack-cocaine offenses before the Fair Sentencing Act.' . . . Unfortunately, the text will not bear that reading. Fortunately, Congress has numerous tools to right this injustice.

*Id.* at 1868 (Sotomayor, J. concurring)

[8]*Shaw* is still good law: the Seventh Circuit recently cited it for its statute-of-conviction categorical approach. *United States v. Dawson*, No. 22-1050, at 2 (7th Cir. Jan. 20, 2023) (citing *Shaw*'s holding "that a court determining eligibility 'needs to look only at a defendant's statute of conviction[]'" and affirming district court's finding that the defendant was not eligible for resentencing "[b]ecause Dawson was convicted of offenses involving powder cocaine, the statutory penalties for which were not modified by the Fair Sentencing Act.").

decision in *United States v. Thomas*, 32 F.4th 420 (4th Cir. 2022), in which the appellate court faced head-on the question of whether a defendant who has a CCE offense under 21 U.S.C. § 848 is eligible to be considered for resentencing in light of *Terry*.

The facts in *Thomas* resemble those at bar. There, the defendant's 1994 indictment included a "CCE offense, under 21 U.S.C. §§ 848(a) and (c)," which "incorporated by reference" twenty counts of "offenses for distributing powdered and crack cocaine," as well as a money laundering count. *Thomas*, 32 F.4th at 422. He pleaded guilty to the CCE and money laundering offenses and, at sentencing, was found responsible for distributing 76 kilograms of crack. The CCE offense carried a statutory imprisonment range of 20 years to life; considering the defendant's offense level of 42 and his criminal history category of III, his guideline sentence on the CCE offense was 360 months to life. *Id.* He was sentenced to 420 months of imprisonment on the CCE offense. *Id.* When he moved in 2019 for a reduction in his sentence pursuant to Section 404 of the First Step Act, the district court found his CCE conviction was not a covered offense and denied his motion. *Id.* at 422–23. On appeal of the district court's denial of the defendant's motion for reconsideration, the Fourth Circuit examined, as "an issue of first impression, whether Thomas's CCE conviction under

---

Considering the reversal of *Hogsett, see supra* note 6, it appears that *Shaw* can be reconciled with *Terry* as follows: the district court should look to the statutory penalties associated with the statute that defines the particular offense of which the defendant was convicted, *and no further in the statutory scheme*, to determine First Step Act eligibility, but where the statutory penalties for the defendant's statute of conviction were unquestionably modified by the Fair Sentencing Act, the defendant need not show his particular offense and drug quantity themselves were subject to a lower statutory penalty range.

§§ 848(a) and (c) qualifies as a "covered offense under the [First Step Act]." *Id.* at 423.

The appellate court held that—"pursuant to *Terry*"—the defendant's conviction was not a covered offense under the First Step Act, because the Fair Sentencing Act did not modify the statutory penalties for an offense under those particular subsections. *Id.* at 423, 427 ("Thomas's statutory penalty range for violating §§ 848(a) and (c) remained the same before and after the [Fair Sentencing Act][.]"). Further, the Fourth Circuit rejected the defendant's arguments that he was eligible "because the Act modified the penalties for § 848(b)," and the defendant "could have faced an enhanced minimum life sentence [thereto] based on his indictment incorporating his crack cocaine offenses." *Id.* at 428.

The appellate court acknowledged that judicial factfinding at sentencing could have triggered a mandatory life sentence under § 848(b)—in other words, that "since the [First Step Act] altered drug quantities required to trigger the penalties for §§ 841(b)(1)(A) or 841(b)(1)(B), it also modified the drug quantities required to sustain a conviction under § 848(b)." *Id.* at 428–29 (additionally noting that, if the defendant were sentenced today, under *Apprendi*, 530 U.S. 466, the prosecution would have to prove beyond a reasonable doubt that he possessed the increased amount of cocaine necessary to receive this enhancement). Nonetheless, the Fourth Circuit held that "the possibility that [the defendant] could have been sentenced under § 848(b) is irrelevant because what matters for our [First Step Act] inquiry is whether the Act modified the statutory penalties for his offense." *Id.* at 429 (citing *Terry*). It did not, and therefore "his offense, under § 848(a) and (c), is not a covered offense." *Id.* at 430 (noting that "*Terry* rejected our approach in *Woodson*, and, so, Thomas's approach here is also

foreclosed"); *see also id.* at 425–26 (contrasting *Terry* approach with that of *Woodson*, which employed the same approach as *Hogsett*, 982 F.3d 463, to determine First Step Act eligibility for unspecified-quantity crack cocaine offenses under § 841(b)(1)(C)).

To summarize, *Terry*, as interpreted by the Fourth Circuit in *Thomas* and as it pertains to certain CCE offenses like Mr. Walker's, stands for the proposition that covered offenses under the First Step Act do not include those offenses charged under a statutory scheme *one part of which* was modified by the Fair Sentencing Act but which did not apply to the defendant, or those that theoretically could have been proven against the defendant.[9]

This Court will adopt the Fourth Circuit's reasoning in considering Mr. Walker's eligibility, and is compelled to reject Mr. Walker's arguments that his CCE conviction is a covered offense for First Step Act purposes. First, as *Terry* counsels, the Court must look to whether the Fair Sentencing Act modified "the statutory penalties for petitioner's *offense*, not the statute

---

[9]At this time, it appears that the Fourth Circuit is the only circuit to have ruled on the merits of this particular issue in a factually-analogous circumstance. The Sixth Circuit faced the question in *United States v. Chambers*, where the defendant's § 848 CCE conviction was premised on his crack cocaine offenses, but declined to answer it because the district court concluded it would not reduce the defendant's sentence even if his CCE offense were eligible. No. 21-1331, 2022 WL 612805 (6th Cir. Mar. 2, 2022), *cert. denied sub nom. Marlowe Chambers v. United States*, No. 22-5470, 2022 WL 17408211 (U.S. Dec. 5, 2022). In January 2022, the Tenth Circuit declined to disturb a district court's finding that a defendant with § 848 CCE conviction premised on crack cocaine offenses was eligible for First Step Act relief, specifically because "neither party challenge[d] this determination." *United States v. Henderson*, No. 21-3138, 2022 WL 259962, at *1 (10th Cir. Jan. 28, 2022); *see also United States v. Palmer*, 35 F.4th 841, 850 (D.C. Cir. 2022) (finding—after the United States conceded the defendant's eligibility—that a defendant's *848(b)* conviction was a covered offense).

or statutory scheme." *Terry*, 141 S. Ct. at 1863.[10] This, of course, raises the gateway question of what statutory offense Mr. Walker was actually charged with and convicted of, since his Superseding Indictment references 21 U.S.C. § 848 broadly rather than any specific subsection. *See* ECF No. 621-3 at 4; *see also* ECF No. 322 at 2 (Judgment, listing 21 U.S.C. § 848).

Although Mr. Walker's offense conduct was not framed in terms of any particular subsection, it is clear based on the Superseding Indictment and the sentencing proceeding that he was convicted and sentenced only under 21 U.S.C. §§ 848(a) and (c). The Superseding Indictment's language tracks the elements of the definition of "continuing criminal enterprise" in § 848(c):

| | |
|---|---|
| [A] person is engaged in a continuing criminal enterprise if— <br><br> (1) he violates any provision of [21 U.S.C. §§ 801–904] the punishment for which is a felony, and <br><br> (2) such violation is a part of a **continuing series of violations** [. . .] <br><br> (A) which are undertaken by such persons **in concert with five or more other persons** with respect to whom such person **occupies a position organizer, a supervisory position, or any other position of management**, and <br><br> (B) from which such person **obtains substantial income or resources**. <br><br> 21 U.S.C. § 848(c). | Jerry Walker[] knowingly and intentionally engaged in a continuing criminal enterprise [involving violations of 21 U.S.C. §§ 841(a)(1) and 846] . . . [which constituted] a **continuing series of violations** . . . undertaken by the defendant **in concert with at least five other persons** with respect to whom the defendant **occupied a position of organizer, supervisor, or manager**, and from which continuing series of violations the defendant **obtained substantial income or resources**. <br><br> ECF No. 621-3 at 4. |

---

[10]*See supra* note 8 and accompanying text.

Drug type and quantity are not referenced in Mr. Walker's CCE offense as charged.[11]

It is true, as Mr. Walker argues, relying on *Moore*, 2020 WL 4748154, that the Fair Sentencing Act did modify the statutory penalties for violations of 21 U.S.C. § 841(a)(1) in the quantities specified in 21 U.S.C. § 841(b)(1)(A) and (B)—and § 848(b)(2)(A) incorporates § 841(b)(1)(B). ECF No. 621 at 9–10. But to adopt Mr. Walker's and the *Moore* court's analysis would require the Court to take the exact kind of entire-statutory-scheme approach to determining eligibility that the Supreme Court roundly rejected in *Terry* and that the Fourth Circuit rejected in *Thomas* when presented with similar facts to those at bar. *See Terry*, 141 S. Ct. at 1863; *Thomas*, 32 F.4th at 427. The Court will not, as urged by Mr. Walker, construe § 848, as a whole, as his statute of conviction when it is clear he was not penalized under the subsection of that statute that was modified by the Fair Sentencing Act. Based on the foregoing, the Court cannot conclude that Mr. Walker's offense was subject to a statutory penalty that was modified directly by the Fair Sentencing Act, which modified the quantities of crack required to trigger certain mandatory minimum penalties.

To the extent Mr. Walker is arguing, as the defendant did in *Thomas*, that he is eligible because he might have been subject to § 848(b)(2)(A)'s quantity-driven penalties, the Court must reject this argument because it is not tethered to the facts of this case nor is it legally dispositive. It is true that

---

[11]The Seventh Circuit has clarified that § 848(b) sets out sentencing factors, not additional elements that must be charged and found by a jury. *See U.S. v. Smith*, 223 F.3d 554, 566 (7th Cir. 2000); *U.S. v. Robinson*, 39 Fed. App'x 386, 388 (7th Cir. 2002). Nonetheless, for the reasons stated below, looking back at Judge Randa's sentencing decisions, it becomes clear Mr. Walker was not sentenced under 848(b).

Judge Randa made findings at sentencing that Mr. Walker possessed 150 kilograms of cocaine—which would have been sufficient to satisfy § 848(b)(2)(A)'s requirement that the offense "involved at least 300 times the quantity of a substance described in subsection 841(b)(1)(B)." Setting aside that it is not clear how much of these 150 kilograms might have been crack cocaine versus powder cocaine,[12] it does not appear that Judge Randa imposed or considered imposing a statutory mandatory life sentence pursuant to § 848(b). Rather, as Mr. Walker himself states in his briefing, his life sentence was a function of a total offense level of 46 and criminal history category of IV on the CCE count. ECF No. 621 at 5–6. The fact that Mr. Walker *could* have been subject to a penalty later modified by the Fair Sentencing Act does not mean he was, in fact, subject to or sentenced in accordance with such a penalty. *See Thomas*, 32 F.4th at 429.

---

[12]Drug type and quantity were not charged or subject to jury factfinding for the § 848 offense because they did not need to be. *See supra* note 11. The underlying drug possession charges in Counts Eight, Nine, and Ten—which Mr. Walker points out and the Government acknowledges were proven with crack cocaine evidence—totaled no more than four ounces. *See* ECF Nos. 632-2 at 11, 632-4 at 2, and 632-5 at 14–15. Under *Terry*'s construction of § 841, this would not be enough to make those underlying offenses First Step Act-eligible either. *See also United States v. Mansoori*, 426 F. Supp. 3d 511, 516 (N.D. Ill. 2019) ("It is the statute of conviction—and specific drug quantities found beyond a reasonable doubt—that control eligibility under the First Step Act, not 'actual conduct.'" (citations omitted)). In any event, neither the individual drug types and weights in each of the underlying possession offenses, nor the total drug weight, were charged or submitted to the jury. *See* ECF No. 621 at 5; ECF No. 36.

The Court appreciates that the Government has now, apparently, acknowledged that pre-*Apprendi* it would not have included this information in the charging document. ECF No. 641 at 3. Accordingly, pursuant to *Apprendi*, the Court cannot now conclude that the offenses involved *only* powder cocaine. But Mr. Walker's position similarly asks the Court to make an impermissible post-trial finding that his offenses involved an amount of crack cocaine that would be high enough to trigger a penalty later modified by the Fair Sentencing Act. ECF No. 632 at 4; *Thomas*, 32 F.4th at 428–29.

Mr. Walker's argument that he is eligible because crack cocaine was part of the underlying factual basis for his prosecution—despite not being explicitly charged with or convicted of a crack cocaine offense—also cannot fly. The problem is not that offenses involving multiple drug types cannot qualify for First Step Act consideration; they can. *See United States v. Hudson*, 967 F.3d 605, 610 (7th Cir. 2020). The problem is that this argument would require the Court to evaluate his eligibility using a fact-based approach, not a statute-of-conviction approach. *United States v. Dawson*, No. 22-1050, at 2 (7th Cir. Jan. 20, 2023) (citing *Shaw*'s holding "that a court determining eligibility 'needs to look only at a defendant's statute of conviction[]'" and affirming district court's finding that the defendant was not eligible for resentencing "[b]ecause Dawson was convicted of offenses involving powder cocaine, the statutory penalties for which were not modified by the Fair Sentencing Act."). As Mr. Walker's statute of conviction is not otherwise First Step Act-eligible, the Court cannot give weight to the fact that the Government used a small amount of crack cocaine among the evidence used to prosecute him.

The Court must, under *Shaw*, look only at the statute under which Mr. Walker was convicted, rather than at the facts of his case. And under *Terry*, the Court must look no further in the statutory scheme than Mr. Walker's individual statutory offense to determine his eligibility; the Court may not look to provisions adjacent to his statute of conviction that the Fair Sentencing Act *did* modify. Accordingly, it cannot be said that Mr. Walker's CCE conviction under 21 U.S.C. § 848—the sole remaining basis for his confinement—carried a statutory penalty that was later modified by the Fair Sentencing Act, which modified only 21 U.S.C. § 848(b) through its incorporation of 21 U.S.C. § 841(b)(1)(B).

The Court thus concludes Mr. Walker is ineligible for resentencing under Section 404 of the First Step Act. With this conclusion, the Court also recognizes this is a somewhat incongruous result—did Congress really intend for defendants convicted of § 848(b)'s "super" CCE offense and subject to a mandatory life sentence to be eligible for resentencing, while leaving those who were convicted of the more "basic" CCE offense in § 848(a) and (c) without a remedy? As higher courts have noted, the disjunction here will likely require a legislative rather than a judicial fix. *Cf. Terry*, 141 S. Ct. at 1864–68 (Sotomayor, J., concurring).

### 4.2     Eligibility for Compassionate Release

#### 4.2.1     Procedural Exhaustion

Mr. Walker appears to have met the procedural exhaustion requirement. On August 14, 2020, he filed a request for compassionate release with Warden F. Entzel at FCI Pekin. ECF No. 634-1. On September 1, 2020, Warden Entzel denied the request. *Id.* More than thirty days elapsed from Warden Entzel's receipt of the request to Mr. Walker's filing both his original motion for First Step Act sentence reduction on November 18, 2020 and his supplemental motion for compassionate release on December 15, 2020.

The government initially appears to argue that Mr. Walker was required to lodge an administrative appeal of Warden Entzel's denial with the Bureau of Prisons before seeking relief in the District Court. ECF No. 634 at 4. However, neither 18 U.S.C. § 3582(c)(1)(A) nor the implementing regulations require this. "When an inmate's request is denied by the Warden . . . [t]he inmate *may* appeal the denial through the Administrative Remedy Procedure," but is not required to do so. 28 C.F.R. §571.63(a)

(emphasis added).[13] As the government appears to concede in its updated response brief, ECF No. 637, by waiting to file until more than 30 days had elapsed from the Warden's receipt of his request, Mr. Walker has done all that is required of him procedurally.

### 4.2.2 Extraordinary and Compelling Circumstances

The outbreak of COVID-19, together with underlying medical conditions that place a defendant at "high risk" should he contract the disease, may establish an extraordinary and compelling reason warranting release. *See, e.g., United States v. Gonzalez*, Case No. 13-CR-101-JPS, 2020 WL 4437154, at *4 (E.D. Wis. Aug. 3, 2020). In the past two years, the risk calculus has changed significantly given the introduction of several very effective and increasingly widely available vaccines that inoculate against COVID-19. Importantly, on August 23, 2021, after rigorous and thorough evaluation, the Food and Drug Administration approved the Pfizer-BioNTech COVID-19 vaccine for all individuals aged 16 years and older.[14] Other vaccines, including the Moderna vaccine, have been approved for emergency use since late 2020, with great success.[15]

It quickly became the law in the Seventh Circuit that, "for most prisoners[,] the availability of vaccines for COVID-19 'makes it impossible to conclude that the risk of COVID-19 is an "extraordinary and compelling"

---

[13]*See also* Fed. Bureau Prisons, *Program Statement 5050.50: Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g)* 15 (2019), https://www.bop.gov/policy/progstat/5050_050_EN.pdf.

[14]FDA News Release, U.S. Food & Drug Admin., FDA Approves First COVID-19 Vaccine (Aug. 23, 2021), https://www.fda.gov/news-events/press-announcements/fda-approves-first-covid-19-vaccine.

[15]*See* U.S. Food & Drug Admin., Moderna COVID-19 Vaccine (updated Aug. 18, 2021), https://www.fda.gov/emergency-preparedness-and-response/coronavirus-disease-2019-covid-19/moderna-covid-19-vaccine.

reason for immediate release.'" *United States v. Sullivan*, No. 20-2647, 2021 WL 3578621, at *2 (7th Cir. Aug. 13, 2021) (quoting *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021)); *see also United States v. Burgard*, No. 20-3210, 2021 WL 3781384, at *2 (7th Cir. Aug. 26, 2021); *United States v. Eveland*, No. 20-3449, 2021 WL 3414202, at *1 (7th Cir. Aug. 5, 2021); *United States v. Ugbah*, 4 F.4th 595, 597 (7th Cir. 2021). Still though, the Seventh Circuit has instructed district courts to take a deeper dive:

> We close with an observation about COVID-19 vaccines in the context of requests for compassionate release. The government points to our language in *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021), in which we said that the availability of vaccines had effectively eliminated the risks of COVID-19 to most federal prisoners. But that opinion was handed down before Omicron became the dominant variant in this country (with an increase in breakthrough infections among the fully vaccinated). And it included a safety valve for prisoners to show that they are unable to receive or benefit from a vaccine, or that they remain vulnerable to severe infection, notwithstanding the vaccine. *Id.* Recent events underscore the need for a district court's opinion to leave us assured that it considered the applicant's individualized arguments and evidence.

*United States v. Rucker*, No. 21-2001, 2022 WL 610625, at *3 (7th Cir. Mar. 2, 2022).

An individualized look at Mr. Walker's case instructs that compassionate release is not appropriate based on his age, underlying health condition, and past COVID-19 diagnosis. While vaccination status does not immediately eliminate an inmate from consideration for early release, in Mr. Walker's case it underscores that he is sufficiently protected from the virus. There is currently one inmate case of COVID-19 at FCI Pekin

and one staff case[16]; *Rucker*'s concern about emergent variants does not seem to be playing out at Mr. Walker's institution. The Court recognizes that both his age, now 55–56 years old, and his past stroke place him in demographics at higher risk for severe illness from COVID-19 should he be reinfected.[17] But this risk is more speculative than tangible, given his vaccination status and the current low threat of infection at Pekin.

In this lower-risk context, Mr. Walker has provided no additional explanation (despite filing an additional reply brief, ECF No. 640) as to why his age or past stroke make him especially "vulnerable to severe infection, *notwithstanding* the vaccine." *Rucker*, 2022 WL 610625, at *3 (emphasis added); *see also Broadfield*, 5 F.4th at 803 (noting that a prisoner "who can show that he is unable to receive or benefit from a vaccine" might still be considered a good candidate for compassionate release "but, for the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release").

Mr. Walker has not averred, for example, that his past stroke continues to impair his immune system such that he cannot fully benefit from the vaccine's protection; he has only stated that the past stroke continues to impair his communication abilities. ECF No. 632 at 16. Similarly, his statement that he has "fluctuating blood pressure" does not

---

[16]Fed. Bureau Prisons, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/ (last visited Feb. 17, 2023).

[17]Ctrs. For Disease Control and Prevention, *COVID-19 Risks and Vaccine Information for Older Adults*, https://www.cdc.gov/aging/covid19/covid19-older-adults.html (last visited Feb. 17, 2023); Ctrs. For Disease Control and Prevention, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Feb. 17, 2023).

on its own establish that he remains especially vulnerable to COVID-19 complications more than any other vaccinated inmate—he does not specify how often and to what extent his blood pressure fluctuates and, moreover, what health risks this poses. Moreover, he does not state whether or why these conditions cannot be managed from inside the prison setting. Mr. Walker's age and health circumstances therefore do not present extraordinary and compelling reasons warranting compassionate release.

### 4.3   Entitlement to Relief

Based on the above determination that Mr. Walker is ineligible to be considered for resentencing or compassionate release, the Court declines to reach the matter of whether he in fact qualifies for either. The Court, parenthetically, commends Mr. Walker on the admirable progress he seems to have made toward post-sentencing rehabilitation. *See supra* Section 2.2.

### 5.   CONCLUSION

Finding him ineligible for such relief, the Court must deny Mr. Walker's motion for sentence reduction pursuant to Section 404 of the First Step Act, ECF No. 621, and his request for compassionate release, ECF No. 625. The United States' motion to seal, ECF No. 638, will be granted, and the relevant submission, ECF No. 639—which contains Mr. Walker's personal health information—will be sealed. Mr. Walker's motion for an extension of time to file his reply brief, ECF No. 631, will be denied as moot.

Accordingly,

**IT IS ORDERED** that Defendant Jerry Walker's motion for a reduction in his sentence pursuant to the First Step Act, ECF No. 621, be and the same is hereby **DENIED**;

**IT IS ORDERED** that Defendant Jerry Walker's request for compassionate release, ECF No. 625, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that the United States' motion to seal, ECF No. 638, be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that Defendant Jerry Walker's motion for an extension of time, ECF No. 631, be and the same is hereby **DENIED as moot**.

Dated at Milwaukee, Wisconsin, this 21st day of February, 2023.

BY THE COURT:

_____

J. P. Stadtmueller
U.S. District Judge